May it please the court. My name is Richard Rinaldo and together with Timothy Battle, we represent the appellant Linda Howard. I've reserved three minutes for my rebuttal time. This appeal presents two questions for review by this court. The first is whether the civil remedy provisions of the Trafficking Victims Protection Reauthorization Act, which is a very hard statute to keep saying, so I may refer to it as the TVPRA, which isn't a lot easier, which is found in Section 1595 of Title 18, may be applied retroactively and extraterritorially to conduct which occurred entirely outside of the territory of the United States, in fact in Yemen, and it occurred all prior to the effective date of Section 1596 of the Trafficking Victims Protection Reauthorization Act, which was effective on December 23, 2008. There is no dispute in this case that all of the conduct at issue in this case took place outside the territory of the United States in Yemen, and that it all took place prior to December 23, 2008. That is a case of first impression before this court. In fact, it is a case of first impression before every appellate court in the United States, except the United States Court of Appeals for the Fifth Circuit, and that court decided in Adhikari v. KBR, Inc., that Section 1596, the extraterritoriality application, could not be applied extraterritorially or retroactively to govern conduct occurring prior to the effective date of the statute. In 2008. In this case, that is the only appellate court that has decided the issue, and frankly it's decided the issue favorably to Ms. Howard. There are issues in the case which of course some would argue make it a fact-dependent analysis and may serve to help distinguish Adhikari from the facts at issue in this case. Which is precisely what the district court did in this case. The district court specifically in the district. Did you drive the case? I'm sorry? Did you drive the case? I did, Your Honor. I was lead trial counsel accompanied by Mr. Battle in the case. And so I was before Judge O'Grady for all of the trial. Obviously there's no question of waiver of the appellate argument in this case. I made it as a motion for summary judgment, part of an affirmative defense. I made it as a motion in limine. I made it as a motion but the end of the plaintiff's evidence. I did it at the conclusion of all the evidence. And I did it as a request for post-trial relief. Actually, Judge O'Grady smiled when I kept doing it and said he understood completely why I was doing it. And the fact of the matter is when Judge O'Grady and the district, as the district court of course, specifically was analyzing this. He pointed out the fact that this is a, he pointed out that he believed this was a fact-specific inquiry. If the court, Judge O'Grady's opinion is found beginning on page, I believe it's 144 of the joint appendix. And the issue that he talks about has to do with how he distinguishes Adhikari and thereby gets to a place where this statute can apply. The point is, I think this court is all aware, that if in fact the traffic, the civil remedy provisions of the Trafficking Victims Protection Reauthorization Act cannot be applied retroactively and extraterritorially to govern this conduct, that is a matter of law which is dispositive of this case and this court will never reach the second issue I raised on appeal, which I'll discuss in the final few minutes of my oral argument time. But you have, aside from the retroactivity of 1596, you have at the time of the conduct alleged, 1595, so you have a civil cause of action.  Excuse me. Correct, Your Honor. And you have the predicate statute, 1591 at least, that allowed for special maritime jurisdiction, correct? That's also true, Your Honor, but the question is whether it extended the civil cause of action as opposed to criminal causes of action, just as what Ms. Rowe's counsel relied on, and Judge O'Grady mentions at some length, which is section 3271. How could, I mean, in 2003, the act is amended to extend 1591 to special maritime jurisdiction, which includes embassy facilities and residences, correct? True, Your Honor. And at that same time, 1595 creates civil liability for all the 1580 and 90 statutes. Also true. So how can there not be civil liability for special maritime jurisdiction for at least 1591 violations? I know 1589 and 1590 don't have that special maritime provision, but 1591 does. Well, section 7, the special maritime jurisdiction, essentially is a jurisdictional statute, not a merits claim. And the merits is can this create a cause of action for civil plaintiffs, as opposed to a criminal extension. In United States v. Pissarro, which is a case that this circuit decided in 2009, and I do recognize that Pissarro was a criminal case, but the language of Pissarro specifically states, Your Honor, that that section of the special and maritime extended criminal jurisdiction. It didn't say it's extended jurisdiction. Our position, Your Honor, is that as far as any violations of the statute, to the extent that it creates a cause of action for civil plaintiffs seeking damages, that is a distinction which is very important. But why didn't 1595 do that? 1595? I don't know, Your Honor, to tell you the truth. Assume I think it does. Why am I wrong? Well, as far as 1595, Your Honor, let me pull that. 1595, it says any victim, any individual who is a victim, that is the 1595 is the civil remedy provision. Right. Okay? But I'm looking here in 1595, and I'm looking at 1595, and it doesn't say special and maritime jurisdiction. Oh, it definitely doesn't. But 1591 does. And so if 1595 creates civil liability for 1591, and 1591 is extended to special maritime jurisdiction, why do you not have the ability to pursue a civil claim under 1591? Because I don't think that extended civil causes of action. As the Court of Appeals in Adhikari pointed out, and I might add Judge O'Grady did not rely on that section in the district court. He relied on 3271. Oh, I know you can, Your Honor. I'm well aware that you could affirm on a different ground. The simple point is you've got a civil cause of action, and it was ruled extraterritorial at a later point in time. But at the time that the action took place, the civil cause of action incorporated criminal predicates. And it says if you violate 1591 and others, then you're going to be liable for monetary damages. Then you may be liable for monetary damages. Liable for monetary damages. And the point that my colleague was making that 1591, which includes the special maritime jurisdiction, as I understand it, that would be an extraterritorial application. Well, it would be, Your Honor. That's true. And if the criminal predicate applies extraterritorially, then why wouldn't the civil cause of action, which relies on the criminal predicate, also apply extraterritorially? I think I now understand exactly your question, Your Honor. What I'm saying is that the Supreme Court in RJR Nabisco or whatever it is. It is Nabisco. Said as much. And I don't know that you need to go much beyond that. I don't feel too bad about doing this because, to me, the civil cause of action was later explicitly ruled to apply extraterritorially. Now, it didn't at the time of the conduct, I admit. But an element of the civil cause of action was a violation of the criminal statute. And the criminal statute supplied extraterritorially. And that seems to be the rule of law. And it also doesn't bother me that there was a sizable damage award here because what happened here was heart-rending and just wholly egregious. And probably Judge O'Grady hit it right when he said it was a house of horrors and the defendant's husband is deceased. But as far as I could glean from the record, the defendant was acting as a procurer of sorts for her husband. At least the jury saw it that way. And just I can't imagine what it was like for this woman to live in this household. I can't imagine what it was like. And then when I read those statutes, I'm saying to myself, this kind of human trafficking and abusive behavior is exactly what Congress is after. And so it doesn't seem to me to do violence of the law, to just apply RJR Nabisco and the civil action with the criminal predicates applying extraterritorially and reaching this kind of conduct, which Congress may not have dotted across every T until a little bit later, but it sure knew what it wanted to condemn. And this is at the core. This is at the core of what Congress wanted to get after, and that is American citizens going abroad, being employees of the State Department in foreign capitals, and abusing vulnerable people, vulnerable women in the way that this was done. And that's that 1591 special maritime jurisdiction is the extraterritorial hook that would allow us to apply the civil cause of action retroactively. Your Honor. And it all happened on the embassy grounds. It did. Well, no, it did not happen on embassy grounds. It happened in housing, in housing, to be correct, and I'm not arguing that that's a difference. The sexual conduct happened on the residence, but the original procurement, to use Judge Wilkinson's terminology, happened at the embassy. It wouldn't make any difference, Your Honor, as far as that's concerned. I'm not arguing that issue. I'm not arguing that point, Your Honor. I'm also standing here defending human trafficking, Your Honor, and given the jury's verdict in this case. We're not challenging the amount of the verdict. We're not challenging the amount of the verdict. I'm sorry? We're not challenging the punitive damage award. No, I'm not, not in this appeal. Although our second issue, which I'm going to get to, our second issue has to do with the fact that we've raised an issue about whether Judge O'Grady abused his discretion in permitting Jane Doe to testify at trial on the evidence. The other woman. That's correct. That was a discretionary call. I know that. And it's 404B evidence. But also under 415 he held, too. I understand all of that, but 404B requires evidence of misconduct by a party, and Russell Howard had been dismissed from the case, was not a party. 415 refers to sexual activity, and 415 specifically talks about that sort of activity. Let me phrase this correctly. The event in question with respect to Jane Doe occurred in Tokyo afterwards. It didn't occur prior to the employment of Ms. Roe, in this case, in Yemen. 404B draws a distinction between prior bad acts and afterwards. I do. I do. Did I make the argument? Yes. Tell me why. Well, because subsequent bad acts, a prior bad act argument means that the person had a propensity to do it again, and it goes to that area of credibility. That doesn't apply to whether this might have been a prior bad act. I thought 404B dealt with pattern and practice. Well, yes, but that pattern and practice doesn't. Here's pattern and practice. Only afterwards, not going into. Whereas before or after doesn't make any difference. I think it goes. Relationships with each other and conspirators with each other, I mean, all that stuff. Well, it's a party, Your Honor. So why wouldn't your argument go to weight rather than admissibility? Well, because it's not. You have to admit it, and you can argue that, well, this was after the fact. It didn't make a difference. Well, I did make that argument, Your Honor. I actually made that argument, Your Honor. Well, but, you know, I'm not going to be able to just do it. I do think that the question is more important than simply a weight question. It has to do with the specific language. It has to do with the fact that it allowed Ms. Doe to testify. The other person allowed Ms. Doe to testify, essentially backing up the credence of the first person. All I'm suggesting is that relevance here might be a matter for the jury. I don't think so, Your Honor. The matter was already held by Judge O'Grady to be relevant, and that's the point. It's not a weight issue. The point of the matter is that if we look very carefully at 404, that had to do with a party's misconduct. If we looked at 415, that doesn't apply. And, frankly, these – Husband and wife are into it together. Your Honor, not as far as – There's evidence it's a package deal. Your Honor, I respectfully disagree as far as the sexual – Young lady up for her husband, and they're picking out clothes for her. We've looked at this record, too. I'm sure you have, Your Honor. I was there. Let me go back to the verdict, because the verdict, as I read it, has a million-dollar actual damages award for the four causes – Each of the four causes of action, but they were duplicative. Okay. So if we were – And without saying what we're going to do, if we were to affirm the verdict as to 1591 only – It wouldn't change a thing. It wouldn't change the verdict. No. Your Honor, I'm out of time. May I answer that question? Sure. It wouldn't change the verdict. What we're arguing is that 1591 also doesn't warrant the jury award, and since I'm out of time and I have rebuttal time, I'll address that further when I come back. I took a little bit of your time, and I'm sorry. That's all right, Your Honor. You answered what I was saying. I know. I know. But I would like to go back in rebuttal to some of the – What point did you want to make? Because I took a little bit of your time, so I want you to have – Well, I want to make sure that the issue in this case, if you take a look at this district court's opinion, it was relying on 3271. And 3271 was enacted in 2006 with respect to this conduct. So it clearly governed it. It would have governed it if it applied, but it doesn't. And the reason it doesn't is that – Why does the district court need to rely on anything more than 1591A? Because, Your Honor, I don't think 1591A also extended the civil jurisdiction because if it had, you wouldn't have needed 1596. It doesn't have to. 1596 goes beyond. You do need 1596 because 1596 – I think your argument would be more compelling if 1596 only created extraterritorial jurisdiction for 1591. But I don't think there's any question that 1589 and 1590 didn't have any extraterritorial jurisdiction. 1591 did. For some reason, Congress elected to treat it differently, and then there's a civil cause of action that applies to it. So 1596 was saying, all right, we don't have it just limited to 1591. We have it to all those predicate statutes. May I answer? Yes, sir. With respect to 1596, which was adopted in 2008, it doesn't say anything about which sections. And as far as 1591, 1591, if one looks at the language of the statute, 1591 does extend extraterritorially, but it uses criminal language, just like 3271 did. But does it really matter? It does. The Supreme Court is saying in RJR Nabisco, as I understand it, that as long as a civil cause of action relies on an extraterritorial criminal predicate, that the civil cause of action applies extraterritorially too. Your Honor, that's the Fifth Circuit considered that argument, considered RJR Nabisco, and declined to accept it. It took a different position on that because it said it created a whole new class of plaintiffs with different interests from those of the government. And that's why the Fifth Circuit dealt specifically with 1589 and 1590 and not 1591, correct? Your Honor, I'm not going to make that representation because what I'm going to do is when I sit down and I'm going to look at that, which is I'm going to look at Adhikari, which is right here. All right. Thank you. Thank you. Thank you, counsel. Ms. Patterson, we'd be happy to hear from you. Yes, Your Honors. My name is Melissa Lynn Patterson, and I represent the Eppley, Ms. Sarah Rowe, along with Christian Vergonis. Your Honors, as you pointed out, this is a case about a U.S. government official who on U.S. former U.S. Embassy subcontractor to work as a live-in housekeeper in her U.S. Embassy home. But she also utilized that U.S. Embassy position to coerce that live-in housekeeper to submit to sexual assaults and rapes in exchange for pay, which was funded by the U.S. government. And the question before Your Honors today is whether a presumption of statutory interpretation or a canon of statutory interpretation, the presumption against extraterritoriality, allows Linda Howard to escape the consequences of her recruitment, coercion, and trafficking of Ms. Rowe, conduct which the jury below unequivocally found violates the Trafficking Victims Protection Act. And the answer to that question, Your Honors, is no for three reasons. First, as Your Honors pointed out, under RJR, the law is clear. If the civil remedy relies on predicate acts that extend extraterritorially, then the civil remedy itself also extends extraterritorially. We need go no farther than that, do we? Absolutely, Your Honors. And that's a very straightforward proposition that resolves the case, if we were to agree with it. That is absolutely true, Your Honor. And as Mr. Rinaldo pointed out, that is not something he's contesting. I'm wondering whether we even need to get into 1589 and 1590 and everything because it seems to me that the clearest extraterritorial application was, as Judge Quattlebaum pointed out, 1591. That is absolutely true, Your Honor. And to the extent that Your Honors have questions about the other issues, I'm more than happy to go into them, particularly the evidentiary issues, et cetera. However, as Your Honors pointed out. What evidentiary issue? That's on the 404B evidence, right? There was a 404B, Your Honor, as well as the hearsay statements by Mr. Howard, which Judge O'Grady admitted as both co-conspirator statements, therefore not hearsay, and also as statements against interest. Challenging that on appeal, too? Yes, Your Honor. He said he had that one issue. The statements that Mr. Howard made was during Jane Doe's testimony. He raised both of them in his arguments about Jane Doe's testimony. With respect to both of them, you know, we'd rest on our briefs on that matter unless Your Honors have further questions on it. I just can't believe that Congress intended something like this to just fall through the cracks. I mean, there are statutes everywhere around it. And they didn't dot the final I until 1596A. But they sure, if you take these statutes in pari materia and look at the civil cause of action and look at the criminal predicates, you say, yes, this is exactly what Congress was after. This is exactly the kind of behavior and misconduct that Congress wanted to forbid on the part of State Department employees. I mean, you get, America gets, the statutes here sort of brim with the recognition that America gets a terrible name if its State Department employees go over and treat foreign nationals or vulnerable employees in this fashion. And it's so clear that Congress says, yes, this is what we wanted to prohibit. That's absolutely right, Your Honor. And I think we see that in 3271 as well, which specifically captures conduct by individuals such as Linda Howard, which are U.S. government employees. And as Judge Quattlebaum pointed out, 1591 was passed at the same time as the civil remedy. And Congress knew that when they passed the civil remedy, they incorporated 1591 and all that came with it, including the special maritime and territorial jurisdiction. So it's clear based on the textual analysis and the context of the statutes as a whole that this conduct is captured within the Trafficking Victim Protection Act's civil remedy. We wouldn't have to deal with touch and concern, which, to my knowledge, has never been applied to this statute or has never been applied outside the Alien Tort Statute. We could just rely on the statutes at issue in the causes of action. Do you agree? Absolutely, Your Honor. There have been some district courts that have applied touch and concern outside of the ATS statutes. But certainly, Your Honors, we need not address that issue because 1591 is so clear. Sufficient unto the day. Yes, Your Honors. Thus, if Your Honors have any further questions, I'm happy to answer them. But we would— Let me see if we have— We have no questions. Thank you, Your Honors. I'd like to make a comment, Your Honor. I don't know how they got into it, but I think it's commendable to see a law firm of this caliber handling this case. Thank you, Your Honors. It doesn't mean we appreciate your argument any the less. It might mean we appreciate your argument all the more. Thank you, Your Honors. Mr. Rinaldo. Yes, Your Honor. First things first. With respect to Judge King's question, I didn't— If you look at the second question presented, it was not only 404 and 415, but it had to do with out-of-court hearsay statements made by Russell. I just didn't have time to address that during my principal argument. I addressed it in the brief, and I'll leave it at that for now. I remember. Okay. Well, brief. Okay. Secondly, during Ms. Lynn Patterson's argument, I pulled, as you know, Adhikari. What I find in Adhikari is a comment on—when it's talking about the enactment of 1596, and it says, additional jurisdiction in certain trafficking offenses provides, in addition to any domestic or extraterritorial jurisdiction otherwise provided by law, the courts of the United States have extraterritorial jurisdiction over an offense or any attempt or conspiracy to commit an offense under Sections 1581, 1583, 1584, 1589, 1590, or 1591. Where is that? I'm just looking to try to find a page number. It's in Adhikari itself. It's in Title B, the TVPRA claim, and it's right down at the bottom of the first paragraph there. I'm looking for a page number in my Westlaw publication, and I can't find it. You see it, Your Honor? See how it includes 1591 there? Okay. Sorry to say okay in an oral argument like that, but, you know, 1591 is clearly included there as one of the things that was listed in 2008, which may be why Judge O'Grady didn't rely on it and relied on 3271 instead. Your Honor, I understand the horrific international consequences of human trafficking. I also understand that in the context of an appellate argument from a jury award, I'm very limited in what I can challenge about the findings that were made by the jury, despite perhaps the introduction of some evidence that might have swayed them another way by Ms. Doe's testimony, which came at the end of the trial. I understand that. But the point is that the conduct at issue in this case, I think the record will show that my client has, I understand the jury chose a different way, but my client consistently not only denied her involvement, but denied that her husband, who had passed away, was ever guilty of any of this. She didn't believe it. And she probably wouldn't be the first wife who was in that situation, I'm sorry to say. But I'm not going to defend human trafficking. But the fact of the matter is this conduct occurred in 2007. It occurred in Yemen, and it occurred 11 years ago at a time when the civil remedy provisions did not apply overseas. 3271, and we've got three pages of our brief on it. 3271, may I finish this sentence, Your Honor? You certainly may. Okay. 3271 extended the criminal jurisdiction extraterritorially, not the civil. We have three pages of legislative history, including statements by the author of the bill, Representative Chris Smith, who has authored most of the Trafficking Victims Act, who makes it eminently clear that that extended criminal jurisdiction, not civil jurisdiction. So 3271, which is what Judge O'Grady mentioned, and what the plaintiff in this case was relying on, doesn't apply to this case. 1591, all I can say is it's included here. I understand that the court is sympathetic to the plaintiff. I understand that. But that doesn't mean that we can extend the statute beyond the statute's reach. I hope you understand the legal argument that we've made. I do understand it completely. As far as the horrific nature of the conduct, if Your Honor goes back to the beginning of Adhikari and sees what the facts were in Adhikari, that was a whole lot worse. I'm not minimizing the conduct here, but it's all kinds of horrific misconduct going on in the world, and the horrific conduct that took place in Adhikari did not prevent the Fifth Circuit from finding that you have to go with the language of the statute at the time. And I respectfully disagree, Your Honor, that 1591 extended civil jurisdiction extraterritorially at the time. But you do agree that I understand the argument that by referencing 1591, you claim that meant it was not otherwise covered. That's right, Your Honor. That's one way of reading it. I don't think that's the only way to read it. But I appreciate that. But in Adhikari specifically, the claims alleged were 89 and 90. Yes, Your Honor, that is correct. I meant to say that, and I got involved in the argument because I promised I would look. I did not see a reference to the claim. I looked at the statute in 1591 as it applied at that time, and I think that was – and I may be wrong because I didn't have much time to look, Your Honor. I had like 15 minutes. I think that the statute, 1591, back at that time, applied principally to conduct involving children. But I'm not sure about that, and I don't want to make a universal representation to this Court to the contrary. But the question is, when the Court looks at it, is not what 1591 says today, but what did 1591 say in 2007? Thank you, Mr. Farrell. Thank you. We'll adjourn court and we'll come down and recounsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.